But Your Honor, I'm here because questions of fact clearly exist as to the true motivation for the plaintiff's termination in this action. If we look at the facts, as alleged, in which Mia asserted is true in his motion for summary judgment, the plaintiff was suspended after each time he came back for a medical leave caused by a medical condition that he suffered. First, in August of 2007, he suffered a seizure, and the first that he gets back, he is suspended. His supervisor, Doug Sanders, later admits that the suspension was an error. Then, when he comes back, he also requests that he be given refresher courses. They deny this request. He also says that he is taking anti-seizure medication, and he asks for a later start time, two hours later, so that he won't be groggy when he comes into work. His initial start time was 2 a.m. He asked to come in at 4 a.m., which is not an issue because the planes did not get in until 4 a.m., and he was the manager at the airport supervising the unloading of the planes. He stops taking his medication because they refused the accommodation and refused to engage in the interactive process. He then suffers another seizure. He's out on medical leave, and the first day back from medical leave, he's suspended again for his attendance. Counsel, here's what concerns me about your half of the case, and that is that there's certainly a timeline, a temporal proximity, but I don't see anything additional to that. In other words, there were issues with performance and issues with attendance that went back a long way, even before the initial injury that occurred here, and there was a sort of an actual attendance guideline, like a percentage. So it was not subjective in that sense. It was a goal. So what facts are there other than just timing in support of your theory? Okay. First, I would say that in and of itself, the timing creates a question of fact that allows me to get the trial with respect to what their motivation is, given he was suspended, disciplined out of the first day back after each medical leave. Now, but let's get on to the main point. The performance deficiencies that they talked about, some occurred eight years prior to his termination, and when he first got back from that second medical leave, he was immediately suspended, then a week later presented with a separation notice. In other words, he was terminated at that point, and then after he refused to sign, they went back and combed through his records to find administrative errors that they thought could justify the termination. If these errors had been so sufficient, he would have been disciplined then before that time, before he got a suspension for his attendance, and he met or exceeded expectations in every performance review he got for the 13 years he was with Federal Express. So questions of fact exist as to whether these minor paperwork errors, some occurring eight years before, which didn't reflect his performance at the time of termination, were the basis for his termination, especially considering the fact that his new manager had no knowledge of his performance. He had never worked for him, and the new manager suspended him the first day back and then subsequently terminated him without ever observing my client's performance. And so based upon that, at a minimum, questions of fact exist as to what the true motivation was for his termination and whether or not these minor paperwork errors occurring eight years prior to the time of termination were sufficient to justify his termination. And so basically, in closing, I would just say that my client, he went on medical leave once. First day back, suspended. The defendant later admits that was an error. It was wrong. He shouldn't have been suspended for being on medical leave. He asked for the accommodation. He asked for refresher courses. Denied. He asked for a later start time. Denied. So he stops taking his medication. He suffers another seizure. The first day back with a new manager not familiar with his performance, he's suspended immediately. Then a week later, he's basically fired, signed a separation agreement. He refuses. Then they comb through his file, going back over all the years he was there, finding things that happened eight years earlier, and saying this is the basis for your termination. Clearly, questions of fact exist as to what their true motivation was for terminating my client and whether or not these paperwork administrative errors justified his termination. Okay. Thank you, Your Honors. Good morning. What condition was he suffering? Seizures, Your Honor. I mean, what epilepsy? Yes. He wasn't sure what the cause of the seizures was, but he was undergoing having seizures and taking anti-seizure medication. And Judge Pregerson, I would point out that there was never a diagnosis made of Mr. Allen's condition. He never received a diagnosis and was, therefore, unable to share a diagnosis with Federal Express Corporation. Well, you could have had him examined. I'm sorry? You could have had him examined. He never requested an examination. He never stated he was disabled. He never indicated that he had any kind of work restrictions whatsoever. So why was he getting these leaves? Why was he getting the leaves? Because for brief periods of time, he was, in fact, off work due to a medical condition that was never diagnosed. So on two separate occasions, he was unable to work. But following both of those occasions, he was returned to work full duty without any restrictions whatsoever. And Mr. Allen never represented the Federal Express Corporation that he needed any type or, you know, that he had any type of restriction or that he was unable to fully perform his job. What I'd like to point out for the court first. What about the coming back through the record to justify his termination? Well, we didn't do that. The facts in this case are undisputed. This is a case, probably a rare case, where the facts have been stipulated to. They're undisputed. There are no issues of fact. And if the court reviews the facts set forth in Apolli's brief, they will see that, as Judge Graber pointed out, there was a long history of administrative failures. And the administrative failures that precipitated his termination occurred and were discovered while he was on his second medical leave. They were innocuously discovered by a manager who was filling in for Mr. Allen during Mr. Allen's second medical leave. And at the time that the suspension occurred, the manager who issued the suspension was already fully aware of at least three egregious administrative errors that were brought to his attention by the manager who was filling in for Mr. Allen. You mean FedEx was asleep all this time? No, Federal Express was not asleep. And the undisputed facts will show. You said they had to go back through his record to find all these problems. No. Mr. Allen misrepresented or Mr. Autry misrepresented the record. The vast majority of the administrative failures that were discovered on the second medical leave occurred between January 9th of 2008 and January 29th of 2008 when Mr. Allen allegedly suffered the seizure at home. So during a 20-day period, Mr. Allen committed numerous administrative failures that admittedly were not detected until he went on the second medical leave beginning January 29th of 2008. So we weren't going way back eight years. That's completely false, and the undisputed facts show that. We were only going back a couple of weeks, and the administrative errors that resulted in his termination occurred on the heels of his negative performance review. He received warning after warning. If FedEx did anything wrong in this case, it was that we were far too generous with Mr. Allen. He probably should have been fired much sooner than he was. But we did a very good job of documenting the history of his problems, and he kept promising us he would do better, but he never exhibited improvement. And the administrative failures, as I mentioned, that resulted in his termination occurred right after his performance review. And when he was suspended, the manager who issued the suspension was aware of at least some of those failures. And prior to the time that the severance agreement was offered, the manager became aware of additional failures. And then when Mr. Allen rejected the severance, the undisputed facts show that we completed our investigation by getting statements from Mr. Allen, allowing him an opportunity to somehow explain the administrative failures, and he couldn't do it. As he did throughout the entire course of his employment, he admitted he was screwing up. He admitted that he made the errors, and he didn't have a good excuse for them. And so, you know, FedEx exercised its rights under the law to fire him for a legitimate, non-discriminatory reason, which is what happened here. Both of you sound like you're making closing arguments to a jury. I apologize. That's not my intention. Believe me, I'm acutely aware I'm not in front of a jury right now. But anyway, I'm sorry. Well, I wonder, Mr. Wilson, if you could talk to this question of accommodation or interactive process. Sure. Both are bundled here together. Yes, Judge. What is your position with respect to the exhaustion issue? With regard to the exhaustion issue, my first point would be that that issue was waived, as I pointed out in my papers. I think it was clearly waived. It was one of three separate and independent grounds the trial court relied on in dismissing the interactive process claim. But even assuming there weren't a waiver here, because I recognize the Ninth Circuit has discretion to consider the exhaustion issue. I don't think it should exercise it here. But in the event it does, there was a failure to exhaust for the reasons articulated by Judge Morrow in her opinion. And I thought she did a very, very good job of citing the relevant case law, both from the state courts in California as well as federal courts. You know, it's our position that due to the failure to exhaust, the district court lacked subject matter jurisdiction over the interactive process claim. And the reason there was a failure to exhaust is, as pointed out by the trial court, Mr. Allen made it very clear that all he was complaining about was the termination that occurred on March 22nd of 2008. He identified one date of the discriminatory act, and he wrote in perceived as disabled. He didn't check the box for reasonable accommodation. I noticed from Mr. Autry's comments, he made it sound like Mr. Allen has a reasonable accommodation claim, which he does not. That's clearly undisputed. And then he didn't provide any facts at all suggesting that he had an interactive process claim. He identified the date. He said it was a discriminatory termination based on a perceived disability. He only identified one manager, and that was Pablo Bertinelli, the terminating manager. The accommodation requests were made to Doug Sanders many months before the termination. So he didn't identify in his charge the manager who allegedly failed to engage in the interactive process. So his complaint, his charge was very specific by identifying just one date and one discriminatory action termination. And the case law explains that under those circumstances, there is not a failure to exhaust because neither the DFEH, Federal Express Corporation, were put on notice that an interactive process claim was being alleged. You said not a failure to exhaust. There was a double negative in there. I apologize. Are you saying there was a failure to exhaust? I'm sorry, Your Honor. Yes, I'm absolutely saying there was a failure to exhaust. But like I pointed out earlier, I don't think the Court needs to get there because there was clearly a waiver of that issue in this case. Because Mr. Autry or Helland in his brief only presented analysis and argument with regard to one of the three separate and independent grounds the trial court relied on to dismiss the interactive process claim. And by doing that, you know, by not arguing two of the grounds, the other grounds, if you fail to argue even one of the independent grounds, the other grounds become moot. And so, you know, all of the grounds were mooted by the failure to present argument and analysis with regard to each one of those grounds. That's our position. But I was very impressed with Judge Morrow's opinion, and I think she provided a thorough analysis and justification for dismissing on all three of the separate and independent grounds that she highlighted or outlined. So, you know, I would also point out that in Helland's brief, he failed to cite to the record even once. He cited the 12 pages over and over again, pages 651 to 663 of the excerpts of record. Well, that was his opposition brief. His brief is points and authorities in opposition to the motion for summary judgment. And the circuit court rules make clear that, you know, points and authorities are not part of the record. They shouldn't be included in the record. And that's the only support he cited to in his entire brief. So not only did he stipulate to all of the facts in the trial court, but now he's trying to create disputed facts after stipulating to them by making general conclusory statements without citing to the record, without providing any record support at all. And certainly that's not sufficient to overturn a trial court decision or to create a disputed issue in the trial court. Scalia. Well, that's the one thing that I had trouble following the trial judge on was her discussion of what would have happened if we assume, if we assume that there was a duty to engage in the interactive process. On page 25 of her opinion, she says, well, all he's done is identify the two things he asked for originally, training and the one other. And that's not going to get him any place. It's rather conclusory. How do we know it wouldn't have gotten him any place? How do we know? The reason we know it wouldn't have gotten him any place is we thoroughly litigated this case in the trial court. And even after discovery, thorough discovery by both sides, he is unable to identify any reasonable accommodation other than the two that he allegedly identified before his employment ended. And based on the Scotch decision, since he was able to identify two accommodations before his employment ended, then his remedy, his claim, was a failure to accommodate claim, which he didn't bring. Under Scotch, the most recent California court of appeals decision, to bring an interactive process claim, you have to be able to identify accommodations. The interactive process would have yielded. Is this just a question of his having put the wrong label on his claim? No. I don't think it's that. I don't think either claim is viable. Well, let me. We just scratched out interactive process and put reasonable accommodation. Does the man have a good claim? Does the man have a good claim? I mean, at trial he wouldn't, but let me think about that for a second. If he had, you know, we have to assume that what he said in the trial court, we have to take it as true. He claims that he requested two accommodations, which were denied. You know, I'm not sure. I'm not ready to concede that that would be a viable claim, but I think it's irrelevant here because obviously he didn't bring a failure to accommodate claim. It's not in his lawsuit. It's not pled as a claim in his lawsuit. And there was a box for him to check for reasonable accommodation, and he didn't do it. So I just, it's an interesting question, but I just don't think it's relevant. Who filled out that form? Who filled out that form? I, honestly, I'm not sure the record reveals who filled that out. I believe, I don't know if he was, I believe he was represented by counsel, but I don't want to misstate the record. It's not in my statement, the statement of facts I prepared. I honestly don't know who filled that out. But I don't think it matters. I believe the trial court even cited to some cases where pro se plaintiffs had filled out the administrative charge. You know, I know she cited to at least one case, and the court found that even though charges completed, you know, by a pro se plaintiff are more liberally construed, that doesn't mean that they're going to accept every charge without some critical analysis. And in the case that the trial court cited to, there was a finding of failure to exhaust in spite of the fact that it was a pro se plaintiff who had completed the charge. But certainly the appellant had an obligation to identify somewhere in the record who completed the charge if he wants to argue that his charge should be more liberally construed because it was prepared by an unrepresented employee. And I know he didn't do that in this case. So anyway, I believe that there are obviously multiple reasons that we went in this case. We've got the waiver argument that we presented in the briefs. Three of the claims were waived, you know, from the get-go. The wrongful termination and violation of public policy claim, the intentional infliction of emotional distress claim, and the interactive process claim were all waived. So that leaves us with pretext. Well, that leaves us with the discriminatory discharge claim, and the court dismissed that claim because the appellant was unable to present specific and substantial evidence of pretext. And I believe Verholding was right in that regard. The appellee has also pointed out in this brief that, you know, he was able to get past the burden of establishing a prima facie case, because we think as a matter of law, Mr. Allen was not perceived as disabled. You know, in light of the Winortho decision, we don't think there's enough evidence on the record to establish that, you know, he was even perceived as disabled. But certainly on pretext, the trial court had it right. You know, as I've stated already, the facts in this case have been stipulated to you. The trial court did find in a footnote one disputed fact, but she found it was immaterial, and I agree with her on that. So 114 of the 115 facts that were presented to the trial court with the motion for summary judgment were stipulated to you. And as Judge Graber pointed out earlier, I mean, the facts tell a long story of repeated and severe administrative failures every step of the way. And, you know, Mr. It's too late now for the appellant to try to run from the facts. When you talk about administrative failures, what are you specifically referring to? There were a wide variety of administrative failures. He failed to properly calculate and record employee attendance and punctuality percentages. He failed to timely administer performance reviews, which is a big deal because employees receive their merit pay increases based on their performance review scores. He failed to issue discipline to his employees, which is also a big deal. On one occasion, an employee was promoted who shouldn't have been promoted. You know, it's impossible to further the growth of your employees if they're not receiving the discipline that they deserve to receive, and he continuously failed to issue proper discipline. Well, how about his people who were superior to him in the company? They didn't pick up any of this? No, they did, which is why Mr. Allen received multiple forms of discipline, very severe discipline. He received two performance reminders. One of those performance reminders was accompanied by a decision day. In other words, he was suspended for a day for the purpose of allowing him to prepare a performance planner and decide whether or not he wanted to continue his employment with FedEx. The warning letter was accompanied by a five-day suspension without pay, and he received that warning letter just a very short time before the motorcycle accident that resulted in his discrimination claim. So he was on the brink of termination. He was teetering on the edge of termination immediately before he suffered the motorcycle accident. So we did notice it, and we documented it. All right, Bill, I just noticed you're 6 minutes 44 seconds over time. I apologize. I wasn't sure what that clock meant. It meant when it turned red, your time was up. I apologize. Thank you, Your Honor, so I appreciate it. Rebuttal? Yes, Your Honor. I'll be brief. Counsel talks about repeated and severe performance issues. If he was a 13-year employee, his annual performance reviews reflected he had met or exceeded the expectations every single year. If he had severe and repeated performance issues, they would have been reflected in his performance reviews. They were not. His supervisor admitted that all people at Federal Express received performance reminders over a 13-year period. That's not uncommon, not grounds for termination. With respect to whether they were told of a disability, when he got back, he said, I need refresher courses, you know, I've had these seizures. They refused to give him. He said, please, let me have a two-hour later start time. They refused, and the refusal led directly to the second seizure. And it was only after the second seizure, and he's terminated, the moment he gets back to work, that they start combing through the file and looking for all these things that occurred in his time. How do you know that? Oh, because that was in Pablo Bertinelli's deposition. And also, when you look at the suspension notice, it says it's for attendance. And later, when he gets terminated, they don't put it there. It says attendance and performance. Okay. There's a catch-all phrase that says overall performance. It doesn't specify those issues, and they only came up after he came back to work, and they looked through his file. And counsel has admitted, it's undisputed, that they went back and looked through his file for those administrative errors after he was already suspended and presented with a separation notice saying, leave here. So basically, they already made the decision to terminate him. And who filled out that initial form? I believe that the client filled out the initial form, although I do believe that I looked at it before. But let's talk about the form. What do you mean, did you fill it out? He signed it. I looked at it before because I know I provided it to him. And the point I would make on that is, Your Honor, the law is, is that all facts that lead to the causes of action on that form are deemed included in the form. In other words, you don't have to put every single cause of action on that form. Well, but it's very specific. He said, I was fired because my employer believed I had a physical disability, period. That's it. That's it. There's nothing else encompassed in that. There aren't any additional facts. Anything that we could say that would lead, that they would, investigation would result leading from that is deemed to be a cause of action that can be alleged based on that form. You don't have to list all facts on that form. If there's enough on there leading to these issues, for instance, if he says, I had a disability, of course, whether, I was fired because I had a disability. Whether he was given accommodation because of disability he alleged arises from the facts on that form. And based on the case law, I wish I could pull up that case really quickly, but there is clearly case law that says that anything that arises from the facts on that form is deemed to be included. You don't have to allege every single fact, as long as it gives rise to facts arising from it. I take it that's your answer to the district court's conclusion that you waived reasonable accommodation and interactive process. No, I don't believe it was waived, Your Honor. I believe that the form gave rise to facts leading to those issues, and the complaint in and of itself alleges that. So your position is as long as you allege the underlying discrimination, everything flows from that? Correct, and the facts leading to it, why they believe he was terminated. And the independent fact was that he was fired for having a medical condition. So even if we didn't even have those two other claims, summary judgment should not have been granted, though I'm not saying anything was waived. I believe it all arose from the facts included on that form. But listen, the form was filled out in your office, and you checked it over after he signed it. Is that what you told us? Yes, I will say that, Your Honor. And so, again, anything arising from that fact that gave them rise to investigate the facts is included as a cause of action that is properly alleged. You don't have to put every single fact, only the facts giving rise to the claims. And the disability did give rise to the failure to accommodate, the failure to engage in the interactive process, which they clearly did not do, which was clearly alleged in the complaint. Thank you.
judges: Pregerson, Ripple, Graber